**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ELLEN HIBBLE, Mrs.,
Plaintiff-Appellant,

v.                                                                              No. 96-2180

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-465-A)

Argued: October 27, 1997

Decided: January 7, 1998

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge,
and MERHIGE, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge Hamilton wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Karl George Feissner, FEISSNER & SLATKIN, Wash-
ington, D.C.; Paul Howard Zukerberg, Washington, D.C., for Appel-
lant. Thomas Mercer Ray, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen
F. Fahey, United States Attorney, James E. Macklin, Special Assistant
United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ellen R. Hibble appeals the district court's dismissal of her Federal Tort Claims Act suit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Finding no error, we affirm.

I.

During a visit to Arlington National Cemetery, Ellen R. Hibble ("Ms. Hibble") fell down a set of stairs on the "Custis Walk," fracturing both ankles and breaking her right leg. The location on Custis Walk where Ms. Hibble fell was covered with leaves which concealed broken concrete and round concrete stones that had broken off from the walkway. No signs or barriers were erected to warn the public of any potential hazard.

Ms. Hibble subsequently filed suit for her injuries under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq. Prior to trial, the government moved to dismiss her complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the action was barred under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). The district court granted the government's motion, holding that the discretionary function exception applied in the instant case because (1) no federal statute, regulation, or policy specifically prescribed a course of action for the Superintendent of Arlington National Cemetery, thus leaving the operations of the cemetery to his discretion; and (2) the Superintendent's discretionary decisions were based on considerations of public policy.

2

II.

The FTCA provides a limited waiver of federal sovereign immunity for tort claims. United States v. Orleans , 425 U.S. 807 (1976); Baum v. United States, 986 F.2d 716 (4th Cir. 1993). There are several enumerated exceptions to this waiver, however, the most relevant for purposes of this appeal being the discretionary function exception. 28 U.S.C. § 2680(a).[1] Pursuant to the discretionary function exception, a court lacks subject matter jurisdiction over any suit concerning government conduct that (1) involves an element of judgment or choice, and (2) is an action or decision based on considerations of public policy. Berkovitz v. United States, 486 U.S. 531, 537 (1988); United States v. Gaubert, 499 U.S. 315, 323 (1991). The requirement of judgment or choice is not satisfied, however, if "`a federal statute, regulation, or policy specifically proscribes a course of action for an employee to follow,' because `the employee has no rightful option but to adhere to the directive.'" Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536). In fact, if a regulation mandates particular conduct and the government employee violates that regulation, "there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." Id. at 324.

Ms. Hibble argues that with respect to her situation, there was an applicable regulation or policy, namely Army Pamphlet ("AP") 290-5, which required either the immediate repair of the hazardous conditions on Custis Walk, or the erection of barriers or warning signs. Although it states in the introduction to AP 290-5 that "[t]his pamphlet describes the procedures and policies for the administration, operation, and maintenance of Arlington National Cemetery," it also explicitly states that AP 290-5 is merely "a guide" and not a mandatory directive. AP 290-5. Furthermore, Army Regulation ("AR") 25-30 makes clear that pamphlets[2] such as AP 290-5 are not included

_____

[1] Under 28 U.S.C. § 2680(a), federal sovereign immunity is not waived for:

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

[2] AR 25-30 defines a Department of the Army Pamphlet as "[a] permanent instructional or informational publication." AR 25-30, ch. 2, § 2 at 111 (emphasis added).

3

among the list of "publications that will be used to issue departmental policy." AR 25-30, ch. 2, § 1, 2-2b. Thus, contrary to Ms. Hibble's assertion, we find that AP 290-5 does not qualify as the sort of "federal statute, regulation, or policy" which would preclude the application of the discretionary function exception. There being no mandatory statute, regulation, or policy specifically prescribing a course of action for the Superintendent of Arlington National Cemetery, we find that the first prong of the Berkovitz-Gaubert test is satisfied.

As to the second prong--that the discretionary decisions be based on public policy considerations--we concur with the district court's findings. Decisions regarding leaf removal, the maintenance and repair of grounds and walkways, the posting of warning signs, and the closure of portions of the cemetery are inextricably tied to a variety of public policy considerations--including balancing public access with public safety, historical and cultural preservation, fostering a somber and reflective atmosphere, and conserving natural as well as fiscal resources.

Accordingly, we find that the district court correctly determined that the discretionary function exception applies in the instant case and properly granted the government's Motion to Dismiss.

AFFIRMED

HAMILTON, Circuit Judge, dissenting:

The government knew as far back as 1991 that Custis Walk presented a known danger to pedestrians using the walk. [1] Despite its

_____

[1] The evidence on this point is indisputable. After performing a detailed site inspection of Custis Walk at the request of the Superintendent of the Cemetery, Hank Masser, an engineer with the Army Corps of Engineers, concluded that "[d]ue to its deteriorated condition and heavy volume of tourist traffic, the walk is a potential safety hazard to the public." (J.A. 176). Furthermore, just one month after Ms. Hibble fell, the Cemetery's chief engineer, the Chief of the Army Corps of Engineers, the Chief of the Army Contracting Division, and the Chief of the Army Construction Operations Division all agreed to a written restoration plan for Custis Walk. Specifically, that plan states: "Due to the deteriorated condition of the walk it has become a safety hazard to the public." (J.A. 283).

4

knowledge of the danger, the government failed to warn the public of its existence, even though leaves covering Custis Walk in the fall and winter months obscured the danger. As a consequence, Ms. Hibble, who was at the Arlington National Cemetery visiting the graves of some family members in December 1994, slipped and fell on the leaf covered Custis Walk, the only pathway back to her car, breaking both ankles and her right leg. As a result of her injuries, Ms. Hibble is disabled.

The majority concludes that the government met the second prong of the Berkovitz-Gaubert analysis[2] because "[d]ecisions regarding leaf removal, the maintenance and repair of grounds and walkways, the posting of warning signs, and the closure of portions of the cemetery are inextricably tied to a variety of public policy considerations--including balancing public access with public safety, historical and cultural preservation, fostering a somber and reflective atmosphere, and conserving natural as well as fiscal resources." Ante at 4. Critically, the majority ignores that this case involves a failure to warn. FTCA failure-to-warn cases involve "considerations of safety, not public policy." Faber v. United States, 56 F.3d 1122, 1125 (9th Cir. 1995). Accordingly, in FTCA failure-to-warn cases, the discretionary function exception is limited "to those unusual situations where the government was required to engage in broad, policy-making activities or to consider unique social, economic, and political circumstances in the course of making judgments related to safety." Id.

In this case, the government was not called upon to make broad policy-based decisions and no unique circumstances are present. This case is about the government's failure to warn Ms. Hibble of the danger that Custis Walk presented to pedestrians. The circumstances of this case are no different than a tort claim against a private individual who has failed to warn of a known danger on his or her property. When, as in this case, the governmental negligence is essentially identical to that performed by a private citizen, no broad policy decision or unique circumstances are present. Accordingly, the government failed to meet the second prong of the Berkovitz-Gaubert analysis. I, therefore, respectfully dissent.

_____

**2** I agree with the majority that the government met the first prong of the Berkovitz-Gaubert analysis.

5